IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:10-CT-3042-F

| | |
|---|---|
| HOWARD DUFFIS CLAUDIO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| THE GEO GROUP, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

On April 5, 2010, Howard Duffis Claudio, an inmate in the custody of the United States Bureau of Prisons currently incarcerated at Rivers Correctional Institution, filed this action alleging that the Bureau and its Director, Harley Lappin, violated his constitutional rights pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Plaintiff also alleged various state law claims against the private corporation with whom the Bureau contracts for the management of Rivers, The GEO Group, Inc., and several GEO employees and administrators at Rivers. In short, plaintiff complains about the alleged harmful effects of his involuntary exposure to second and third-hand tobacco smoke while incarcerated at Rivers.

On July 31, 2012, the court entered an order [D.E. # 47] which, *inter alia*, granted the Bureau and Lappin's motion for summary judgment on plaintiff's constitutional claim under Bivens and granted plaintiff's motion to amend his complaint. Plaintiff's amended complaint alleged a new claim of negligence against the Bureau and Lappin pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*. See Amend. Compl. [D.E. # 48] ¶¶ 75-84. On August 14,

2012, the United States of America[1] filed a motion to dismiss [D.E. # 49] plaintiff's FTCA claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. On August 29, 2012, plaintiff filed his response [D.E. # 52] to the motion, and on September 12, 2012, defendant filed a reply [D.E. # 53]. The matter is now ripe for decision.

Plaintiff accuses defendant of "negligence in transferring Plaintiff to Rivers" because he was a known asthmatic who should not have been transferred from a tobacco-free Bureau institution to a private correctional facility which both allowed smoking in some places and further allegedly failed to enforce its own rules against smoking in unauthorized areas. Amend. Compl. [D.E. # 48] ¶ 76; id. at ¶ 81. He alleges that "[e]ver since his arrival at Rivers, Plaintiff has been subjected to the harmful effects of Second Hand Smoke because smoking is prevalent and pervasive both outside and inside the housing units. There is absolutely no way for Plaintiff to avoid coming in contact with Second Hand Smoke on a daily basis." Id. at ¶ 36. Plaintiff asserts that his exposure to second-hand tobacco smoke at Rivers has exacerbated his asthma and caused "severe headaches, dizziness, angina, irregular heart rhythm, weakness, shortness of breath, itching of the throat and exacerbation of his allergies." Id. at ¶ 37. He also claims that he "faces an increased risk of contracting lung and heart disease and other ailments" due to the second-hand smoke at Rivers. Id. at ¶ 38. Plaintiff further contends both that the United States knew he would "suffer from harmful and potential life-threatening effects of Second Hand Smoke" when it transferred him to Rivers, and that the harmful effects of second-hand smoke are well-known to the United States. Id. at ¶ 43. Plaintiff maintains

---

[1] Plaintiff's amended complaint maintained the Bureau and Lappin as defendants for purposes of the new claim under the FTCA. However, as the United States rightly recognizes, "the United States is the only proper defendant in an FTCA case." Def.'s Supp. Mem. [D.E. # 50] 1 n.1. Thus, the court will refer only to the United States as the defendant in this order.

that, in transferring him to Rivers, the United States breached its duty to "protect Plaintiff's health

. . . from the obviously harmful effects of Second Hand Smoke," and that his injuries are "a

proximate and foreseeable result" of defendant's decision to transfer him to Rivers. Id. at ¶¶ 76, 80.

The United States contends that plaintiff "failed to exhaust his administrative remedies

within the two year statute of limitations" and, therefore, the court lacks subject matter jurisdiction

over any FTCA claim in the amended complaint. Def.s' Supp. Mem. [D.E. # 50] 1. The United

States seeks dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

> When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff. In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth facts beyond the pleadings to show that a genuine issue of material fact exists. The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.

Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)

(citations omitted).

In order to bring a suit against the United States under the FTCA, the plaintiff must first

present his claim to the federal agency within two years of the date on which the cause of action

accrues. See 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred

unless it is presented in writing to the appropriate Federal agency within two years after such claim

accrues . . . ."). This two-year statute of limitations is jurisdictional and may not be waived. Kokotis

v. United States Postal Service, 223 F.3d 275, 278 (4th Cir. 2000).

Generally, a claim accrues for purposes of the FTCA at the time of the plaintiff's injury.

3

Gould v. U.S. Dept. Of Health & Human Servs., 905 F.2d 738, 742 (4th Cir. 1990) (citing United States v. Kubrick, 444 U.S. 111, 120 (1979)). This rule is sometimes referred to as the "injury occurrence" rule. However, in medical malpractice cases, courts may apply the "discovery rule," pursuant to which a claim accrues "when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury." Id. In the limited circumstances where it is applicable,[2] the discovery rule mandates that a claim will accrue when the plaintiff becomes aware of "the critical facts that he has been hurt and who has inflicted injury." Kubrick, 444 U.S. at 122-23. Once armed with these rudimentary facts, the discovery rule's requirement of due diligence compels the plaintiff to investigate to determine whether his injury was caused by negligent conduct. Id. at 123-24. Hence, "blameless ignorance" of available facts is not sufficient to delay the onset of the limitations period. See Gould, 905 F.2d at 746. Nor may a plaintiff remain willfully ignorant of the legal nature of his claim or whether his injury was caused by negligence in order to delay the accrual of his claim. Kubrick, 444 U.S. at 123-24 (rejecting argument that "if a claim does not accrue until a plaintiff is aware of his injury and its cause, neither should it accrue until he knows or should suspect that the doctor who caused his injury was legally blameworthy").

The facts relevant to the court's analysis are as follows: Plaintiff is a non-smoker and asthmatic who was transferred from a BOP facility in Petersburg, VA, to Rivers in April of 2008. Deposition of Howard Claudio, Def.'s Supp. Mem. ex.1 [D.E. # 50-1]. Plaintiff was immediately exposed to second-hand smoke upon his arrival at Rivers in April, 2008. Id. This exposure "started to bother" him upon his arrival and began affecting his health within four months of his arrival. Id.

---

[2] The Fourth Circuit has indicated its reluctance to apply the "discovery rule" in non-medical malpractice contexts. See Fowler v. United States, 1993 WL 50518, *2 n.4 (4th Cir. Feb. 25, 1993) (unpublished decision).

4

Plaintiff began noticing the effects of his exposure to second-hand smoke before he increased the use of his inhaler a few months later. Id. Plaintiff submitted a "sick-call" request for a medical appointment on July 26, 2009, in which he stated that he had been forced to increase the use of his inhaler due to "the second hand smoke that is pervasive throughout the entire compound and the unit[.]" Claudio Aff., Pl.'s Resp. ex. 1 [D.E. # 52-1] ¶ 4. On August 11, 2009, plaintiff saw a physician, Dr. Summerlin, who prescribed for him an additional inhaler to alleviate the symptoms he described. Id. at ¶ 6. On April 8, 2011, plaintiff filed an administrative claim under the FTCA with the Bureau of Prisons concerning the injuries allegedly caused by his transfer to Rivers and resulting involuntary exposure to second-hand smoke. Id. at ¶ 9.

The United States argues as follows:

> Plaintiff stated in his Complaint that the allegedly negligent actions that form the basis of his claim against the United States occurred in April 2008 when the United States transferred him to Rivers. He admitted that he was immediately aware of the fact that he was being exposed to second hand smoke when he got to Rivers. Even if he was not aware of these problems immediately, he testified that he was definitely aware of them by September 2008. Plaintiff had two years to file his administrative remedy after April 2008 (or September 2008) which would have been April 2010 (or September 2010). He did not file an administrative remedy with the BOP until April 2011. He missed his deadline by about one year (or at least six months). Accordingly, the Court should dismiss Plaintiff's FTCA claim against the United States for lack of jurisdiction.

Def.'s Supp. Mem. [D.E. # 50] 4-5 (citations omitted).

Plaintiff's response is two-pronged. First he implores to the court to apply the medical malpractice "discovery rule" set forth in Kubrick to his claim of negligent transfer. Pl.'s Resp. [D.E. # 52] 5. He reasons that, applying the discovery rule, his filing seeking an administrative remedy in April of 2011 was timely because

> it was in the summer of 2009, that is, between the months of July and August 2009,

5

> that Plaintiff knew without a doubt that his exposure to second hand smoke was the cause of the exacerbation of his asthmatic condition. Hence, the two year statute of limitation in Plaintiff's case, should begin to run from the earliest date of July 26, 2009, when Plaintiff submitted his sick call request, or it should begin to run from the latest date of August 11, 2009 when he saw doctor Summerlin and she prescribed the additional asthma inhaler for his injury. In applying any of those dates . . . Plaintiff's administrative remedy was timely filed in April 2011, within the two year period.

Id. at 6-7. Second, plaintiff attempts to impugn defendant's reliance on plaintiff's own testimony at his deposition that he was aware of and experiencing the harmful effects of second-hand smoke, at the latest, as of September, 2008. He argues that because he "did not get the opportunity to review and make the necessary changes to the transcripts [of the deposition], Defendant cannot wholly rely upon Claudio's statements where the actual medical and administrative records conflicts with Plaintiff's testimony as it relates to the dates he first knew of his injury and its cause. No one's memory is perfect. People forget things or get confused and anyone can make an innocent misstatement or two, as it appears to be in the case of Plaintiff's recollection of the actual dates he knew of his injury and its cause." Id. at 7.

In reply, the United States argues that plaintiff's attempt to recast his "negligent transfer" claim as a medical malpractice claim is unavailing because plaintiff has not properly alleged a medical malpractice claim against the United States and, moreover, cannot allege such a claim because "the BOP did not provide him with any medical treatment." Def.'s Reply [D.E. # 53] 2. The United States also asserts that there is no "conflict" between plaintiff's deposition testimony about when he was first aware that he was allegedly being harmed by second-hand smoke at Rivers and his subsequent assertions regarding when he first sought medical treatment for the condition. Id. at 3.

The court agrees with defendant. Plaintiff's claim against the United States is explicitly predicated on a so-called "negligent transfer." Amend. Compl. [D.E. # 48] ¶ 76. Given the Fourth Circuit's stated reluctance to abandon the general "injury occurrence" rule of claim accrual in favor of the "discovery rule" typically reserved for medical malpractice cases, the court finds that, based upon the content of plaintiff's allegations against the United States,[3] the injury occurrence rule should apply in this case. Under that rule, plaintiff had two years from the date of his injury–the alleged negligent transfer to a facility which allowed widespread smoking–in which to complain administratively to the appropriate federal agency. Because plaintiff failed to do so, his claim under the FTCA is barred by 28 U.S.C. § 2401(b).

Moreover, even applying the discovery rule of Kubrick, plaintiff still failed to file his administrative claim within two years of its accrual. Plaintiff unequivocally testified at his deposition that the exposure to second-hand smoke started to bother him when he arrived at Rivers in April of 2008, and that by September 2008 he noticed detrimental health effects due to the exposure. See Def.'s Supp. Mem. ex.1 [D.E. # 50-1].[4] Where plaintiff alleges that he has a medical

---

[3] In pertinent part, plaintiff alleges that defendant knew plaintiff was asthmatic and that exposing him to second-hand smoke would cause injury, and that plaintiff was immediately exposed to second-hand smoke upon arrival at Rivers. See Amend. Compl. ¶¶ 35, 36, 43.

[4] Plaintiff's attempt to undermine his own sworn testimony from his deposition is unavailing. First, as defendant argues, plaintiff's testimony about when he first noticed the alleged effects of his exposure to second-hand smoke does not conflict with the medical or administrative records plaintiff has submitted. These records only establish when plaintiff finally sought treatment and filed grievances about the alleged harmful effects of his exposure. These records do not even purport to indicate when plaintiff first started to experience the alleged effects of his exposure. Even plaintiff's July 26, 2009, sick-call request indicates that plaintiff had already increased his inhaler usage in response to the exposure months before the request was submitted. See Pl.'s Resp., ex. 1 [D.E. # 52-1]. While, in retrospect, plaintiff might regret the arguable legal effect of his own unequivocal testimony, it does not follow that his testimony conflicts with medical and
(continued...)

7

condition which can be exacerbated by second-hand smoke, that he was exposed to large amounts of second-hand smoke beginning in April of 2008, and he further concedes that he began to notice alleged detrimental effects of the exposure around September of 2008, plaintiff was at that time armed with reasonable knowledge of the "critical facts" underlying his claim. Thus, even under the discovery rule, plaintiff's claim accrued at that time and it was incumbent upon him to exercise due diligence to investigate whether the problems or other health issues he allegedly was experiencing might be attributable to the negligence of defendant. Kubrick, 444 U.S. at 122-24; id. at 123 ("A plaintiff such as Kubrick, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government."). Given plaintiff's numerous allegations about the widely known correlation between asthma symptoms and exposure to second-hand smoke, and the "obvious" risks to him in transferring him to Rivers, plaintiff should not be excused from failing to promptly raise his health concerns with appropriate authorities within two years of the time he first noticed any problems.[5] Accordingly, even under the inapplicable "discovery rule" of medical malpractice cases, plaintiff ultimately failed to file his

---

[4](...continued)
administrative records and is not otherwise entitled to deference.

[5] It is also worth observing that plaintiff's April 8, 2011, filing of his administrative claim, as a predicate to the filing of his FTCA claim in the amended complaint, occurred mere days after the Bureau and Lappin filed their motion for summary judgment on plaintiff's constitutional claims on March 29, 2011. As found by the court in its previous order [D.E. # 47], plaintiff conceded that the Bureau and Lappin were entitled to summary judgment on his constitutional claims. It therefore appears that plaintiff filed his administrative claim, and concocted his convoluted theory that he was not aware of any alleged harm to him until the summer of 2009, as a means of ensuring that the federal defendants from his original action would remain parties to his suit.

8

administrative claim within the two-year limitations period and his claim under the FTCA is barred by § 2401(b).

For all of the reasons given above, the court finds that plaintiff failed to file his administrative claim with the appropriate federal agency within two years of the date on which the claim accrued. Accordingly, the court lacks subject matter jurisdiction over plaintiff's claim under the Federal Tort Claims Act. The United States' motion to dismiss [D.E. # 49] plaintiff's FTCA claim pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is GRANTED. Defendants Federal Bureau of Prisons and Harley Lappin are hereby DISMISSED as parties to this suit.

SO ORDERED. This the 22 day of February, 2013.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge